Good morning, Your Honors. May it please the Court, my name is Dennis Price of Seabock Price for the appellant, Ralph Arroyo. If you'll indulge me, I'd like to reserve up to five minutes for rebuttal. My client, Mr. Arroyo, is a longtime ADA advocate, and despite this circuit specifically admonishing against the use of litigation history in civil rights cases, his history of effective advocacy was used to deny him standing in his claim. This decision violates Ninth Circuit precedent, it doesn't comport with California State Court precedent, and it's unlikely to have the support of the California Supreme Court. And so that leaves me in sort of the awkward situation of asking the three of you to defer ruling on this case to the California Supreme Court on a certified question on appeal, as this is a pure question of state law. So which is the certified issue that you're speaking of? Yes, Your Honor. The bona fide intent language of White v. Square, which was actually also decided on a certified question from the Ninth Circuit. My proposed question would be, does White's bona fide intent language apply in cases involving 51F? Wait, wait a second. Okay. Are you asking us to certify, or are you asking us to wait for something that's already been certified? I got confused there. I'm asking this court to ask the California Supreme Court to answer this question. It is not currently before them. Okay. I guess I misunderstood that. So we have Thurston that has addressed a similar... I mean, we do this all the time, where state questions aren't fully addressed. The California Supreme Court didn't take Thurston, didn't suggest it was wrong. The California Supreme Court itself has suggested that they're worried about this vexatious litigation. Why don't we just go with Thurston? I mean, that is the best estimate of where the California courts are now. That may change in the future, but we're bound by what we think is correct right now. So there are two main reasons for that. First, Thurston doesn't comply with Ninth Circuit  That doesn't matter. I mean, if state law changes, Ninth Circuit precedent is not correct on a state law question. I get a little irritated by... I mean, you're doing what a lot of plaintiffs do, where they get a good ruling in the Ninth Circuit, and then they start coming and flooding into the federal courts to get it, trying to take these issues away from the state courts, which undermines federalism. And here you have an issue where Thurston has gone the other way, suggested something different than what we've said in our prior precedents. Why don't we comply? I mean, doesn't federalism demand that we comply with what Thurston said? Yes, Your Honor. If Thurston said what actually happened in this court, I would agree. However, even the California state courts don't agree that Thurston says what this trial court said. What California? A California trial court and Whitaker v. Krokias. Why do we care what a California trial court says if we have a California Court of Appeals case? We don't allow California trial courts to reinterpret California appellate court decisions. The reason why, Your Honor, is Thurston was a website case, and the context of this being a website case is very different. Okay, that's fair. So you're arguing that we should distinguish it. That's a fair argument. But to suggest that we should ignore it, or that it's inconsistent with our precedent... I mean, is there a rule in the Ninth Circuit that the state law decision has to be irreconcilable with the prior Ninth Circuit precedent in order to revise that? I believe that's exactly what Miller v. Gamme says. Well, Miller v. Gamme says that clearly on federal precedent. Federal. It's not diversity jurisdiction like this. Yes, Your Honor. However, given the context of California state law not having horizontal stare decisis, it seems in compliance with California's application of stare decisis you don't have to follow that necessarily when it's in compliance. But you understand why we're hesitant. I do. You've got a client who's filed 350 lawsuits going around the state. What the district court said here seems entirely appropriate. Now, whether we can consider it as a different issue, but for him to come into court and say, oh, I drove 25 miles away to get my suit button fixed, it's a laughable claim. It's absolutely laughable. Yes, Your Honor, but that's not what happened here. He was in the area already. He didn't drive there to get his suit button fixed. That's fine, but the district court made that decision. I mean, are you arguing that that is an abuse of discretion, the factual finding that the district court made? I am, Your Honor, because of DeLille, which criticized the use of litigation history, the only reason the trial court made this decision. I think your argument is stronger if it weren't a credibility call, because you have two things going on here. You have the summary judgment, and then you have a bench trial. And on the other hand, there's a saying that, you know, appellate courts do what they do because they're not there. And we're not supposed to, which means that we have, you know, we're stepping back, we're looking at it, but it also makes means that we have to give deference to, say, like, credibility findings, because I didn't actually see your client. I didn't actually, you know, I didn't actually hear the evidence. And any of us that have been trial judges or judges, things can look a lot different in person than they do. And so I think you're pushing a rock uphill on the credibility issue, because the judge said, I don't believe that that's what you were doing. It just doesn't make, because there was a button on his NFL jacket or something like that, and he had dropped his daughter off at a disability hearing something along those lines. And I understand that. However, this court in DeLille specifically admonished against using litigation history specifically in the context of credibility determinations for this very issue, because somebody who has a history of a... It precluded. It didn't preclude it. I understand that, Your Honor. It's strongly admonished, and I don't believe that level of reservation was applied in this case, because effectively what's happened is Mr. Arroyo does have a long history of litigation. He doesn't claim that he was here as a tester, but effectively anybody who has a history of tester litigation is going to be precluded from ever winning a case because of their history of tester litigation. California has moved from when... When I was a prosecutor, you could hardly get prior conduct in, and they've moved a long way along those lines in the sense that it's not dispositive, but it certainly does evaluate, you know, if you... I mean, common sense sort of tells us that the best judgment of how someone will behave is how they have behaved, but it doesn't... And so I suspect that that type of evidence is always going to be admissible on some level, but it doesn't mean... A stop clock is right twice a day, too, so it doesn't mean... But I guess I'm wondering, you know, the certification process in California, unfortunately, is quite lengthy, and then they can deny it. We can wait, you know, 16 months to hear whether they're going to take it, and then they... If they deny it, we're right back here, and we're going to be deciding it. I guess I'm sort of wondering how your client... Being hurt because he can't go around and test all these places, you know, I don't know if that's really going to be as much... It's going to weigh so heavily against businesses that need to know what to do and, you know, what problems they have with the ADA. I mean, I don't have... I'm not... You know, I'm going to say it's probably good that people, you know, when people do have disabilities, I mean, a step can be a bar. I mean, it could be a horrible thing that no one else has to worry about, so I don't have issues with that making places accessible, but on the flip side of it, and so I could even say that what your client's doing is admirable to make sure that our world is accessible to people with disabilities, but I don't know, you know, since this is, I guess what your client would argue is he won't make his living of collecting, what is it, 4,000 bucks every time someone's got a violation or something. I don't necessarily think that's what he's arguing, but what I'm arguing is this court has asked the California Supreme Court to weigh in on differences between... We do, yeah. ...state decisions before, twice in the issue of unruh cases, and in both cases, the California Supreme Court has said, our appellate court's got it wrong. We're following the way the Ninth Circuit did this, and when that happened in Munson versus Del Taco, where there was a suggestion that there was a concern about that socialistic litigation, the California Supreme Court specifically said, we're not going to create new elements that go into this, and we're going to enforce the broad view of standing in remedial statutes, in civil rights remedial statutes, which it seems to be trending in that if they want to encourage businesses to fix things, so if they fix them, that's part of the reason that your summary judgment, I mean, the issue became moot. Now, I know that we are deciding whether you can amend it, come up with something at the last minute, and the district court said no, and we have to rule on that because he agreed to the last minute, a claim of the grade or something of the actual spot. So, you know, I guess from that standpoint, the district courts would probably, a lot of, I guess the district courts now are denying, you know, they don't want to take supplemental jurisdiction, and would probably be to get in federal court and jump on the ADA and the UNRU and all of that, so. I do believe, and your Honor is correct, twice in just the last two years, this court has upheld decisions denying supplemental jurisdiction to UNRU claims, specifically for the concern of comity and basically deferring to state law, and here I would ask that this court do that again, let the California Supreme Court make this decision, because frankly, the Ninth Circuit's going to be the publicist. No, we do this all the time. I mean, our case is flooded with situations where the California Supreme Court hasn't weighed in specifically, and we do the best judgment that we can, and it can't just be the case that because we don't necessarily like or, you know, a particular opinion, that we then pick and choose and send that to the California Supreme Court. Thurston may be right, it may be wrong, but the California courts should be the ones that decide that. If you're right that Thurston is so wrongly decided, why didn't the California Supreme Court take it? Well, I mean, the California Supreme Court didn't take up Gunther v. Lynn either, which it then reversed in Munson after a certified question. White v. Square was a certified question from this court, which created this, I would argue, dicta, language about bona fide intent. It should be noted that White didn't allege bona fide intent in his complaint, and the context of that case was a demur or a motion to dismiss. And the California Supreme Court said, that's fine, it doesn't need to be in there. And it said, but you can ask whether or not he had actual intent, bona fide intent. But this idea of subjective good faith is found nowhere. It's not in Thurston. It's not in White. It's only come up in this case. And so I do think that if this court is inclined to extend Thurston, it should give the California Supreme Court a chance to weigh in. Because frankly, when a that's what gets seen. That's what gets cited. And that's what determines the law. Well, if we publish on it, I mean. Well, yes, Your Honor. It would be law of the case on this case. It would. But it would also be an issue of first impression for this court. And so it seems like it would. My question is how we reconcile our decision in Arroyo v. Rosas in 2021 with Thurston. Because Arroyo came out after Thurston and we said a violation of the ADA is automatically without more a violation of the Unruh Act. And I mean, that was after Thurston. It seems to me those two things can't be squared. I mean, am I wrong? I don't think you're wrong, Your Honor, at least with this interpretation of Thurston. I think the question was before this court in Arroyo v. Rosas. This court said that doesn't apply here. But Thurston is about bona fide intent of a website. And that's important because both the Ninth Circuit and the California courts have said websites aren't covered by the ADA, except for to the extent that they have a nexus to the actual service in which you're being denied access. And so if you don't intend to use the service, then the denial of access to the website doesn't matter. But here, the service was the parking spot, just like in Fortenay v. City of La Mida, a Ninth Circuit case. The parking is the service that's being denied. Mr. Arroyo tried to use the parking. He wasn't able to. And so the question of whether or not he had actual intent to use the parking is almost nonsensical because he tried. He didn't accidentally try to use the parking. He clearly had intent. His motivations don't matter. It's what did he intend to do. Well, he deployed his ramp. There's no evidence he didn't deploy his ramp. So we're asking about, well, why did you deploy your ramp? And that's different than bona fide intent. That's bona fide motive, I guess. And that's found nowhere. Munson didn't create that. Munson was asked to. Munson was dealing with a tester. And Munson said, we're not going to weigh in on this if the California legislature has amended the Unruh Act twice since then and not created any of these elements. And so it's inappropriate for the courts to create one when the California Supreme Court said, we're not going to do it. The legislature says, we're not going to do it. And so I would ask that this court not do it. And then I'd like to reserve any remaining time for rebuttal, if I may. All right. Well, we've had a lot of questions for you. So if you want to reserve the balance, and I'll just I'll give you two minutes on rebuttal. All right. Very generous. Thank you. Good morning, Your Honors. Morton Minicus for the Appellees. Good morning. So we've kind of squared up the issues for you here. And maybe, you know, I certainly want to give you time to do stuff. But maybe you can talk about Arroyo versus Rojas and Molsky versus MJ Cable, whether that precludes relief or everyone agreed that there was an ADA violation. Can you kind of jump off of Judge Thomas's last question about whether we're bound by some precedent here? I don't believe we are, Your Honor. What we have here is a progression of what happened in the state court with respect to the bona fide intent issue. We have White, which was basically a pleading case. And in White, they said that what happens in a pleading case doesn't necessarily carry over what will happen at trial. For purposes of pleading, he established his Nunroo Act case. What we have now is Thurston. Thurston wasn't a pleading case. It was a trial case. And in that case, the court specifically addressed whether the standing issue could be presented to the jury with regard to bona fide intent. That was a standing issue. So the Thurston case, that went from the pleading stage to the trial stage. Then we have the fact that in Thurston, the court, the plaintiff then appealed and the petition for review of that case. And that was as late as December of 2022. And the Supreme Court denied the petition. What about the point though that, I mean, it is true that there's only so much weight you can place on a California Supreme Court denial because that doesn't mean they agree with the decision. They may be waiting for it to percolate. And there's other examples, as the opposing counsel pointed us to, where they have weighed in on a certified question and disagreed with the court of appeals decision. Right now, I don't see the Supreme Court changing its mind as to what happened in Thurston, that you need the bona fide intent to have standing to pursue. How binding is Thurston? I mean, aren't you asking us to sort of extend Thurston's analysis? Because it is true that Thurston isn't on all fours with this case. I mean, are we getting ahead of our skis on projecting what another, what the California courts would do in this precise instance? I disagree with your honor that it's not an all four. The language suggests that the bona fide intent should be applied into cases outside of online businesses or established ADA claims. The trial court judge, Judge Rocha, said that when they cited the bona fide intent cases, they also relied on the construction defect cases. And not only, it didn't necessarily apply to online discrimination. They used the line of cases that dealt with construction defects. So the holding in Thurston was very broad in the sense that you have to have, for an Unruh Act violation, you have to have a bona fide intent to use the services of the facilities. It's not just limited to online services. It's also construction defects. I'm sorry. No, go ahead. Just taking a step back, you said a moment ago that Thurston was about standing, but I don't think that's accurate. And Thurston, the court specifically held that the plaintiff had standing and that this bona fide intent went to the merits. That's not what happened in the district court here. The district court here described the bona fide intent as a standing issue. So, I mean, can you explain to me how the district court properly applied Thurston, given that Thurston said clearly that they're standing? The way I read Thurston is that in order to have or make a recovery under the Unruh Act, you have to have a bona fide intent to use the facilities. If you don't have that bona fide intent to use the facilities, then you don't have, you can't recover. Basically, that's what Thurston says. How you phrase it, whether it's standing or not, in order to prevail on your case, you have to have that bona fide intent to use the facilities and not for some ulterior intent or motive. And I'd like to point out that Thurston uses both intent and motive interchangeably. I think it's on page, the last page of the opinion when it describes... There is some concern that if we extend Thurston into this context, we're getting into a whole, I mean, let's say Mr. Arroyo hadn't had a prior history of litigation. You know, would the district court have been out of bounds and started questioning about, well, geez, I don't think you really intended this or not. But the Court of Appeals opinion, as I point out in my brief, wasn't one dimensional. There were multiple reasons why the court found that he did not have the bona fide intent. So if we go on grounds one and two, what the court based his opinion on and left out ground three, which was the litigation history, you would still be in the same position. Right. Here you had he drove 25 miles. And I guess then we get into whether the district court's finding was defensible. But it's not inconceivable that you could be 25 miles away from your house and you want to get something fixed. But this regards other factors that there multiple dry cleaners in this immediate area. In fact, one of the dry cleaners was right on his block. Right. But it seems pretty inconceivable that we'd set a rule that says, you know, the ADA only protects you within a zone around your home. I mean, you know, they should, I mean, anyone with a disability should have the same right to be able to go where they want to for dry cleaning. Now, I understand it. It's really hard to separate that out in this case because of the particular plaintiff we're dealing with. But, you know, we have to think about these things as a court. That's exactly. If the court's decision was one-dimensional, there would be an argument. But the court's decision wasn't one-dimensional. It was based on a myriad of facts here that persuaded the court to go in one direction, and that direction was that Mr. Arroyo did not have the bona fide intent. Not only that, when you look at, when the court reviews the findings of the trial court, there's nothing extraordinarily, you know, that you would look up and say, wow, this is not based on any evidence, or the court's view of the evidence is so far out that no reasonable man would accept such a finding. That's not the case here. The case here is a well-thought-out opinion. There's the evidence that supports it. The judge, when he wrote his findings, annotated it to the transcript, to the testimony at the trial court, and I submit that it was based on a myriad of facts. I guess I'm just still stuck, because we know there was an ADA violation here. Everybody agrees to that. We've held, we held after Thurston, that as the UNRU Act says, an ADA violation is a violation of the ADA. So I just am really struggling to understand then how, outside of this website context that Thurston talked about, how we're going to import a bona fide intent standard into this language is quite clear, and the legislature has never amended it. Except one thing the courts have held, the California courts have held, that the ADA, the federal ADA, has its own standards. The UNRU Act is a state law that has its own standards as found and interpreted by the courts, and I think under the basis of comedy that the court, this court, should say, okay, we'll defer to the state court on the grounds of comedy. This is what the state court in White and in Thurston said about the... Right, but again, and I think either I'm not getting or I'm not understanding the answer to the question of how we square Thurston with our holding, which postdates Thurston in Arroyo v. Rosas, that an ADA violation is without more an UNRU Act violation, and that once you have the ADA violation, all that's left to do on the UNRU Act is just enter judgment. How do we square that? Did we get it wrong in Arroyo v. Rosas? Yes, I think the Supreme Court in White and the Court of Appeal in Thurston said that the UNRU Act has its own requirements with respect to how you're going to apply the UNRU Act, and the court, the district court in by saying that here we have an UNRU Act violation. That's always being litigated, and it goes on to say and distinguish the cases that held that if you have a violation of the ADA, it's only under the federal act, where you don't have any other requirements, just to show that there was a violation. Can I ask, Arroyo v. Rosas, was Thurston at issue in that case? I didn't see the court address it. I don't know whether we know whether Thurston was even presented to the court. I don't know because it doesn't discuss Thurston. Let me, if on the issue, if we were to decide on looking at certification, your co-counsel, not your co-counsel, your colleague on representing the appellant in this matter, asked us to certify. Can you tell me, we know that I'm a California judge from my past, and California does not address these in a very speedy fashion, as some other states are more expeditious in how they address certification issues. What disadvantages would there be to your client if it were certified? Obviously, everyone wants to win outright. Okay, so that aside, I'm not asking you to step back from that, but how would certification disadvantage him? The answer to that is the old adage that justice delayed is justice denied. There has to be an end to litigation. We can't drag this thing on forever. We can't wait years, maybe, for the Supreme Court to decide this case. The issue is here before the court now. We have Thurston. We have the fact that the Supreme Court was faced with the precise issue that's before the court now and denied hearing in Thurston, and I believe the character of the Supreme Court is not going to change in the immediate future, and I don't see any basis why the Supreme Court would even accept certification in this case. What's the status of this case? There was an ADA violation. Has your client paid out, settled the ADA violation? No, he remediated everything. And then it was dismissed. Yes. So that claim is gone, although I guess they're still arguing for injunctive relief. The ADA was all the violations alleged in the complaint have been resolved. And there was no monetary payment made to the plaintiff, just remediation. No, it was done voluntarily. But the appellant asked to amend at late in the litigation to add a new claim of, it's undisputed that they moved the parking space, and so there's another parking space. And late in the litigation, the plaintiff wanted to add a new violation of like something on the grading, like this. Several years later. And the district court denied that. So we're looking at that as well, whether the district court, he's asking us to look at that in this case. The fact is that he never confronted the slope because he never got out of his car or van or whatever. Well, only because the parking spot didn't allow him. Well, the district. No, because the ramp didn't allow him. So he never encountered that slope issue. Okay. Thank you. Your time's up. Unless my questions. No, thank you very much, Your Honor. All right, you have two minutes. Yes, thank you, Your Honors. So I do want to clear up a couple of things. First off, White v. Square was not an ADA case. That's important because Munson was an ADA case. And the whole point of Munson was distinguishing unruh cases that invoked 51F and unruh cases that didn't invoke 51F. So there's a very clear delineation between the standing requirements of the two. The California legislature, understanding that, actually adopted new standing requirements for 51F cases and construction-related cases like this one. All right. I cut you off initially on what you wanted to certify. So tell me what specifically your certified question is. Yes, Your Honor. First, does White's bona fide intent language apply in cases invoking California's 51F? And if yes, does a tester plaintiff's motive for visiting a business affect whether his intentions are bona fide, even if he actually encounters the challenged feature, would be my proposed question. Okay. I'm sorry I cut you off before. I didn't want you to leave without being able to say that. So 5556, it includes the standing for a 51F claim. It was passed after Munson, and it specifically codified what this court did in Chapman, to say that in order to have standing for a 51F claim for damages, you need to either actually encounter the barrier or be deterred by the barrier. Mr. Arroyo actually encountered it, and there was no bona fide language found in that. So that brings us to the question that Judge Thomas asked about whether or not this was in the Rosev's case. I don't believe the actual case of Thurston was cited in the initial briefing there, but there were dueling en banc petitions. I know this because I wrote one of them. An opposing counsel was suggesting that this court should rehear or take en banc the issue of whether or not MJ Cable was still good law. That rehearing was denied. So the question was before the Rosev's case. And Thurston was cited in the en banc? I don't want to misspeak. I don't know for certain if it was. The issue definitely was. I'm shocked that you don't have all 15 pages. The only reason I doubt it is just how close in time they were. And so I would ask this court to look at the fact that standing has been addressed by the California Legislature. The California Legislature was aware of serial litigation at the time, and it specifically took the route of not prohibiting it, but instead limiting it to people who actually encounter the barrier in much the same way that the California Supreme Court said they should in Angelucci, which was also a tester case, and in Munson, which was also a tester case, where the only question is the way the person projects themselves to the business. Did they present themselves similarly to how a customer would? If a customer is denied access to a parking, they go to the parking lot, they try to use it, they leave. That's no different than what a tester needs to do. Thurston was different. Thurston, the question presented to the jury was not whether or not her intent was bona fide. That language wasn't found in the jury instruction. It was whether or not she intended to use the services, and she didn't. She admitted it. She made no effort to make a booking on that website. She didn't even use the booking software for the hotel. She made no effort to call the hotel. She made no effort to book any hotels. She had no intention, bona fide, good faith, or otherwise, to use the service. She got to the website, ran it through a website accessibility checker, and then gleefully left when she found out that it wasn't compliant, making no effort to use the service. That is far and away different than when someone actually encounters a construction-related defect like Mr. Arroyo, and I'd ask this court to either adopt the language that bona fide intent merely means actual intent, rather than putting any baggage on it, or ask the California Supreme Court to explain what does bona fide mean. All right, thank you for your argument. Thank you both for your argument in this matter. This case will be submitted.
judges: CALLAHAN, NELSON, THOMAS